**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| NIAGRA BOTTLING, LLC, | Case No. EDCV 12-00498 VAP (DTBx) |
|---|---|
| Plaintiff, | |
| v. | **ORDER TRANSFERRING CASE TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA** |
| ORION PACKAGING SYSTEMS, LLC, et al. | |
| Defendants. | **[Motion filed on April 11, 2012]** |

This breach of contract case arises from the alleged malfunctioning of several stretch wrapping machines used to wrap palettes of bottled water in clear plastic film for shipping. The machines were built by Defendant Orion Packaging Systems, LLC ("Orion") and sold by Defendant National Packaging Specialists, Inc. ("NPS") to Plaintiff Niagara Bottling, LLC. ("Niagara"). Niagara alleges various maladies ranging from the unusual (e.g., an uninstalled "hot knife guard") to the mundane (e.g., rust) afflicted the machines from the outset.

On April 11, 2012, Orion filed the Motion to Dismiss (Doc. No. 6) for lack of venue now before the Court; in it, Orion argues it is absent from this judicial district entirely, as are the allegedly faulty machines. Alternatively, Orion seeks a transfer of the case to a different forum, pursuant to 28 U.S.C. § 1404(a). Niagara filed a timely Opposition (Doc. No. 9) on April 23, 2012, and Orion filed a Reply (Doc. No. 10) on April 30, 2012. As discussed below, the Court GRANTS Orion's Motion and transfers this case to the United States District Court for the Eastern District of Pennsylvania.

## I. BACKGROUND

**A. Factual Background**

By purchase order dated October 26, 2007, Niagara, styling itself "Buyer," requested five "Orion Model MA-44 Stretchwrapping Systems" from NPS and Orion, collectively styled "Seller." (See Ex. 1 to Compl. (Doc. No. 1).) The purchase order specified that two of the machines were to be shipped to Niagara facilities in Allentown, Pennsylvania; two to Groveland, Florida; and one to Ontario, California. (See id.) It also set forth various delivery and warranty requirements Niagara imposed on the "Vendor," though nowhere in the document was any party identified as the "Vendor." (See id.) Finally, the purchase order incorporated Niagara's "Standard Purchase Terms & Conditions," accessible to the

order's recipient via the Internet, and then insisted that the order's terms control in the face of any of the Vendor's contrary terms. (See id.) Of note, the Standard Purchase Terms & Conditions contained a forum selection clause by which the parties submitted to the jurisdiction of California's state and federal courts, and agreed that the proper venue for resolution of any dispute arising out of their transaction would be "in the County of Orange, only." (See Ex. 2 to Compl. ¶ 16.)

Niagara created a revised purchase order, dated March 28, 2008, in which it noted that the two machines destined originally for Groveland, Florida, would instead be sent to Dallas, Texas, and that it would be entitled to liquidated damages of 5 percent of the purchase price per day if the machines did not arrive by April 25, 2008. (See id.) The revised purchase order otherwise retained the terms of the original order. (See id.)

Niagara contends when the stretch wrapping machines arrived, they tore plastic film excessively; lacked installed "hot knife guards," had sensors and controls that performed inadequately, and had damaged conveyor rollers and broken bolts; were rusty and cracked, overheated and seized, and otherwise failed to perform to specification. (Compl. ¶ 19.) Moreover, the machines

1  sent to Dallas arrived late.  (<u>Id.</u> ¶ 20.)  This lawsuit
2  followed.
3
4  **B.   Procedural History**
5      On February 21, 2012, Niagara filed suit against
6  Orion and NPS in the California Superior Court for the
7  County of San Bernardino, apparently in contravention of
8  its own forum selection clause.  Niagara's Complaint
9  raises claims for breach of written contract, breach of
10 express warranty, breach of warranty of merchantability,
11 and breach of warranty of fitness for a particular
12 purpose.  (<u>See generally</u> Compl.)
13
14     Orion, with NPS's concurrence, removed Niagara's
15 Complaint to this Court on April 4, 2012, alleging that
16 its removal was timely because Niagara did not serve
17 Orion until March 5, 2012.  (Not. of Removal ¶ 2 (Doc.
18 No. 1).)  Orion contends the Court has subject-matter
19 jurisdiction over this action because the parties are of
20 diverse citizenship:  Orion is a Minnesota limited
21 liability corporation whose sole member is Pro Mach,
22 Inc., a Delaware corporation that conducts business
23 principally in Ohio; NPS is a Delaware corporation with
24 its principal place of business in New Jersey.  Niagara
25 is a California limited liability corporation; none of
26 the materials before the Court at the time of removal,
27 however, indicated the citizenship of Niagara's owners or
28

1 members – the relevant factor in determining the
2 citizenship of a limited liability corporation when
3 establishing diversity jurisdiction. <u>Johnson v. Columbia</u>
4 <u>Props. Anchorage, LP</u>, 437 F.3d 894, 899 (9th Cir. 2006).

6     The Court therefore ordered the disclosure of the
7 citizenship of Niagara's owners or members on or before
8 Monday, May 7, 2012; those members are a California
9 corporation and two California trusts.  Consequently, it
10 appears to the Court that the parties are of diverse
11 citizenship.

13     Meanwhile, Orion filed the instant Motion to Dismiss
14 for lack of venue, under Federal Rule of Civil Procedure
15 12(b)(3), or in the alternative, to transfer the action
16 to either the Eastern District of Pennsylvania or the
17 District of New Jersey, pursuant to 28 U.S.C. § 1404(a).[1]
18 The standard for analyzing Orion's Motion is as follows.

20                    **II. LEGAL STANDARD**
21     When a defendant moves to dismiss a case under
22 Federal Rule of Civil Procedure 12(b)(3), the plaintiff
23 bears the burden of showing it sued the defendant in an
24 appropriate venue.  <u>Prawoto v. PrimeLending</u>, 720 F. Supp.

---

[1] While both parties discuss transfer of the case to the Middle District of Pennsylvania (<u>see</u> Mot. at 2; Opp'n at 1), the Court notes that Allentown, the site of the allegedly defective stretch wrapping machine, is actually in the Eastern District of Pennsylvania.

5

2d 1149, 1151 (C.D. Cal. 2010) (citing <u>Piedmont Label Co. v. Sun Garden Packing Co.</u>, 598 F.2d 491, 496 (9th Cir. 1979)).  An appropriate venue, in turn, is a judicial district:  (1) in which "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) in which "a substantial part of the events or omissions giving rise to the claim occurred"; or, only if venue is improper in any other district, (3) in which "any defendant is subject to the court's personal jurisdiction with respect to" the action before the court.  28 U.S.C. § 1391(b).  For defendants, other than natural persons, "with the capacity to sue and be sued . . . under applicable law," residency is established, for venue purposes, in any district where those defendants are subject to the court's personal jurisdiction.  28 U.S.C. § 1391(c)(2); <u>see</u> 14D Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 3811.1 (3d ed.) (discussing the clarifying amendments to 28 U.S.C. § 1391, effective in January 2012, which provide, among other things, that the residency rule established in the former Section 1391(c) applies to all non-natural entities with the capacity to litigate, and not solely corporations).

    In disputing whether it was sued in the appropriate venue, a moving defendant may rely on evidence outside the pleadings, which are not accepted as true.  <u>Doe 1 v.</u>

AOL LLC, 552 F.3d 1077, 1081 (9th Cir. 2009) (citing Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 323 (9th Cir. 1996)).  Nevertheless, a court should draw all reasonable inferences and resolve all factual conflicts in the non-moving party's (i.e., the plaintiff's) favor. See Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1138 (9th Cir. 2004) (holding that, "in the context of a Rule 12(b)(3) motion based upon a forum selection clause," the non-moving party should have reasonable inferences drawn, and factual disputes resolved, in its favor); Allstar Mktg. Group, LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009) (applying the rule in Murphy without regard to whether venue was premised on a forum selection clause).

If the court determines a plaintiff has selected an improper venue, it may either dismiss the case or transfer it to a proper venue.  28 U.S.C. § 1406.  In determining whether to transfer a case, courts typically consider:  (1) the place where any relevant agreements were negotiated or executed; (2) the state most familiar with the law governing the case; (3) the forum chosen by the plaintiff; (4) the parties' contacts with the prospective forum; (5) the contacts in the current forum relating to the plaintiff's claim; (6) the difference in litigation costs between the two forums; (7) the ability of the respective forums to compel the attendance of non-

party witnesses; and (8) the ease of access to various sources of proof. See <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498-99 (9th Cir. 2000) (reciting the factors a court should consider before transferring a case under the similar 28 U.S.C. § 1404(a)).

If the parties' dispute concerns a contract in which they negotiated a forum selection clause, that clause is "a 'significant factor'" in determining whether to transfer the dispute to the negotiated forum, <u>id.</u> (quoting <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 31 (1988)); indeed, such clauses "'should be enforced absent strong reasons to set them aside,'" <u>E. & J. Gallo Winery v. Andina Licores S.A.</u>, 446 F.3d 984, 992 (9th Cir. 2006) (quoting <u>Northrop Corp. v. Trial Int'l Mktg., S.A.</u>, 811 F.2d 1265, 1270 (9th Cir. 1987)).

Having set forth the relevant legal standard, the Court turns now to the question before it: whether Niagara has established venue successfully for bringing its contract claims against Orion in the Central District of California.

### III. DISCUSSION

Niagara can establish venue properly in one of three ways; the question before the Court is whether, construing the available evidence in Niagara's favor, it

has succeeded in doing so. As discussed below, it has not.

Given the incorporeal nature of both NPS and Orion, the overarching question for the Court – though Orion's Motion is nominally about proper venue – is whether the Court can exercise personal jurisdiction properly over Orion. See 28 U.S.C. § 1391(c)(2) (residency of artificial entities is, for venue purposes, coextensive with personal jurisdiction over such entities). Here, if Niagara can show that <u>any</u> court in California could assert personal jurisdiction over both NPS and Orion in this case, and that <u>this</u> Court can assert personal jurisdiction over one or the other, then it can show that this Court is a proper venue in which to sue Orion. 28 U.S.C. §§ 1391(b)(1), (c)(2). Alternately, Niagara may show that its claims arose substantially from Orion's acts or omissions in this district. 28 U.S.C. § 1391(b)(2). Only if there is no other appropriate venue in which to sue Orion may Niagara proceed via the third method of establishing venue before this Court, <u>i.e.</u>, relying solely on the Court's jurisdiction over Orion's co-defendant, NPS. 28 U.S.C. § 1391(b)(3).

**A.   Venue under Section 1391(b)(1)**

Assuming that this Court has personal jurisdiction over NPS, which NPS has conceded implicitly in its Answer by omitting the proper objection (see Doc. No. 13), then to establish this district as the appropriate venue for its suit against Orion, the burden falls to Niagara to show that Orion is subject to the personal jurisdiction of any California court.  28 U.S.C. §§ 1391(b)(1), (c)(2) That court's jurisdiction over Orion may be either general or specific.  CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1074-75 (9th Cir. 2011); Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-02 (9th Cir. 2004).

For a defendant to be subject to general personal jurisdiction in a state, its contacts with that state must be so pervasive that it would be fair to subject it to suit there for its conduct anywhere in the world. Schwarzenegger, 374 F.3d at 801.  Put succinctly, "[a] court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)).

Here, there is no evidence from which to conclude realistically that Orion is so at home in California that it could be haled into court here for its conduct anywhere in the world. Niagara's evidence of Orion's contacts with California consists of statements from its website that it does business in all 50 states; that one of its customers is Walt Disney Co. (owner and operator of the Disneyland Resort, in this judicial district); and that it has a sales representative located somewhere in southern California whose territory is the entire western United States. (See Opp'n at 2-3.) Given the "exacting" nature of the standard for establishing general jurisdiction over a defendant, Schwarzenegger, 374 F.3d at 801, and that courts normally consider the "'longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets,'" CollegeSource, Inc., 653 F.3d at 1074 (quoting Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006)), of a defendant's contacts with a state in determining whether that defendant is subject to the general jurisdiction of the state's courts, the Court cannot conclude from Niagara's meager evidence that Orion could be fairly made to answer in California for any of its activities anywhere in the world.

Orion, however, may still be subject to the jurisdiction of a California court (and venue laid properly against it here) for specific claims arising from its activities in California.  To establish specific jurisdiction in a contract dispute (like this one), a plaintiff must show that the defendant availed itself purposefully of the privilege of conducting business in California – such as by "executing or performing a contract there" – and that the plaintiff's claim arises out of the defendant's California-related activities.  Schwarzenegger, 374 F.3d at 801-02; see Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (distinguishing the "purposeful availment" prong of the jurisdictional inquiry in a contract case from the purposeful direction prong of the same inquiry in a tort case).  If the plaintiff succeeds in making that showing, a defendant may still escape California's jurisdiction by "'present[ing] a compelling case'" that it would be unfair to subject it to proceedings in this state.  Id. at 802 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

Orion argues it did not execute or perform any contract in California; instead, Orion sold stretch wrapping machines to NPS, NPS resold those machines to Niagara, and none of the allegedly malfunctioning

machines were sent by either NPS or Orion to California. (Decl. of Larry Pappenfus (Doc. No. 6-1) ¶¶ 5, 6.)[2] As a matter of Ninth Circuit precedent, these facts are insufficient to confer specific jurisdiction over Orion.

In Gray & Co. v. Firstenberg Machinery Co., 913 F.2d 758, 759 (9th Cir. 1990) (per curiam), Gray, an Oregon corporation (doing business principally in Oregon) bought a used filter from Firstenberg, a California corporation (doing business principally in California), which in turn acquired the filter via the efforts of Polk, an Illinois corporation (doing business principally in Illinois). When the filter malfunctioned, Gray sued Firstenberg and Polk in Oregon; the district court denied Firstenberg's and Polk's motion to dismiss for lack of personal jurisdiction, and found them liable for breach of warranty. Id. at 759-60.

The court of appeals reversed, noting that although Firstenberg had a contract with Gray, that alone would be insufficient to establish specific jurisdiction, and Firstenberg's and Polk's "only contacts [with Oregon] in connection with th[e] sale consisted of Firstenberg's

---

[2] While the Pappenfus declaration states clearly that Orion sold the stretch wrapping machines to NPS, which resold the machines to Niagara, Orion's moving papers say nearly the opposite: "Contrary to Niagara's contention that it purchased the equipment from both NPS and Orion, Orion sold the Systems directly to Niagara." (Mot. at 3.)

1  response to Gray's solicitation for a filter,
2  Firstenberg's telephone conversations with Gray,
3  Firstenberg's mailing the invoice to Gray, and
4  Firstenberg's receipt of payment from Gray." Id. at 760-
5  61.  Gray argued "because Firstenberg knew Gray was in
6  Oregon and Gray would bring the filter to Oregon,
7  Firstenberg should have anticipated being sued in Oregon
8  if something went wrong with the filter"; the court of
9  appeals rejected that argument, noting "foreseeability of
10 injury in the forum does not itself establish purposeful
11 availment." Id. at 761.³

12      The facts before the Court compel the same conclusion
13 in this case that the court of appeals reached in Gray,
14 perhaps even more clearly than the facts in Gray itself:
15 here, the malfunctioning equipment is, unlike the filter
16 in Gray, not in the forum state.  Beyond that, the
17 evidence shows a one time arrangement between Niagara and
18 NPS, by which five Orion strech wrapping machines would
19 be delivered to various locations, including California.
20 It reveals no other contact between Orion and this state

---

³ In any event, that a defendant causes a plaintiff a pecuniary injury in one forum as a result of its conduct in another forum is insufficient as a matter of law to establish jurisdiction over the defendant in the forum where the pecuniary injury occurred. See Bowen v. Lancaster, No. SACV08-00159-CJC(RNBx), 2008 WL 1986036, at *4 (C.D. Cal. Apr. 30, 2008) ("The fact of a plaintiff's residence, and thus the locus of financial damage, cannot support personal jurisdiction over a non-resident defendant.") (citing Hunt v. Erie Ins. Group, 728 F.2d 1244, 1247 (9th Cir. 1984)).

14

at all related to the transaction now before the Court. Accordingly, the Court concludes Orion has not availed itself purposefully of the privilege of doing business in California in this case, and therefore cannot be subjected to specific jurisdiction by courts in this state – including this Court.

As there are no facts before the Court sufficient to demonstrate that Orion is subject to personal jurisdiction (either general or specific) in California, Niagara cannot establish proper venue for its claims against Orion under 28 U.S.C. § 1391(b)(1).

**B.   Venue under Section 1391(b)(2)**

If Niagara can demonstrate that "a substantial part of the events or omissions giving rise to" its claims against Orion occurred in this judicial district, it can establish venue before this Court.  28 U.S.C. § 1391(b)(2).  In a contract case, substantial events to be considered "are where negotiations took place, where the contract was signed, or where performance or breach occurred."  Ming Hsu v. VTEX Energy, Inc., No. C 06-07688 JW, 2007 WL 1232056, at *1 (N.D. Cal. Apr. 26, 2007) (citing Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 842 (9th Cir. 1986)).

Niagara bears the burden of demonstrating that substantial events occurred in this district; its Opposition, however, cites no authority for the Court to recognize as substantial those events that it lists.  For instance, Niagara argues "[a] substantial portion of the contracts for the purchase of the equipment were drafted in Ontario, California" (Opp'n at 5), but no authority for the proposition that sending a form purchase order to NPS has any bearing on Orion's alleged breach of a warranty and thus on Niagara's claims against Orion.  So too for every other contention Niagara makes to demonstrate the substance of the events that occurred in this district.  A party opposing a motion must submit a "brief but complete memorandum which shall contain a statement of all the reasons in opposition" to the motion being opposed, as well as "the points and authorities upon which the opposing party will rely."  L.R. 7-9 (emphasis added).  Without any legal basis for concluding that any events that occurred in this district are "substantial" vis-à-vis Orion, the Court cannot conclude that venue for claims against Orion is properly laid in this district under 28 U.S.C. § 1391(b)(2).

**C.   Venue under Section 1391(b)(3)**

If, and only if, there is no other district in which venue is proper as to both NPS and Orion, Niagara can establish venue in this district if the Court has

personal jurisdiction over either NPS or Orion. Niagara makes no argument as to this prong; hence, the Court assumes its inapplicability.

As Niagara fails to establish that this district is the proper venue, under 28 U.S.C. §§ 1391(b)(1), (2), or (3), for its claims against Orion, the Court must either dismiss those claims or transfer them elsewhere.

**D.   Transfer of Niagara's Claims Against Orion to Another District**

Niagara expressed its preference for transfer of this case to the Eastern District of Pennsylvania rather than dismissal of its claims against Orion, should the Court grant Orion's Motion. Many of the factors the Court considers in deciding whether and where to transfer a case are neutral as between this district and that one. For instance, while Niagara is headquartered in Ontario, California, it has a facility, at which one of the defective stretch wrappers is located, in Allentown, Pennsylvania, within the Eastern District of Pennsylvania. As neither party discusses the need to subpoena non-party witnesses, there should be no difficulty compelling the appearance of witnesses in either forum. Presumably the various sources of proof in this case are documents, and thus completely mobile; one of the defective machines itself, however, is in the

transferee forum.  Niagara concedes that litigation costs "should be about the same" in either forum.  (Opp'n at 11.)  As for the parties' contacts with Niagara's chosen forum, the Central District of California, Orion appears to have few, while Niagara has many (unsurprisingly, since it chose the forum).  But Niagara also has contacts in the Eastern District of Pennsylvania, and Orion consents to venue and jurisdiction in that district. Both California and Pennsylvania have adopted the Uniform Commercial Code in cases involving sales of goods (i.e., stretch wrapping machines), so the forums' laws should be similar (though their choice of law rules may not be). See generally Cal. Com. Code §§ 2101-2801; 13 Pa. Cons. Stat. Ann. §§ 2101-2725.

    Wrapping up the analysis, while the presence of a forum selection clause would result, typically, in the transfer of this case to the selected forum, Niagara itself brought the case in an improper forum (i.e., not one in Orange County), has not requested its transfer to the proper one, and in any event, has provided no authority undermining Orion's position that Orion is not even a party to a contract with Niagara containing a forum selection clause.

18

Having considered the factors set forth in Jones, the Court ORDERS this matter transferred in its entirety to the United States District Court for the Eastern District of Pennsylvania.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes the Central District of California is an improper venue for Niagara's claims against Orion.  The Court therefore GRANTS Orion's Motion; however, rather than dismissing Niagara's claims, the Court ORDERS the matter transferred to the United States District Court for the Eastern District of Pennsylvania.

Dated:  May 14, 2012

VIRGINIA A. PHILLIPS
United States District Judge